IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

HUBERT STRICKLAND, et al.,

        Plaintiffs,

v.                                 CIVIL ACTION NO.  2:07-cv-00967

STATE FARM AUTOMOBILE MUTUAL INSURANCE,

        Defendant.

**ORDER**

Pending before the court is the plaintiffs' Motion for a New Trial [Docket 215] pursuant to Federal Rule of Civil Procedure 59(a).  For the reasons stated below, the Motion is **DENIED**.

**I. Factual Background**

Following a six-day jury trial in this underinsurance and bad faith case,[1] the jury found by a preponderance of the evidence that the plaintiffs, Jesse and Sinda Barker and Hubert and Agnes Strickland,[2] had not suffered damages proximately caused by Charles Dean's negligence or fault. On March 6, 2009, I entered judgment for the defendant State Farm Automobile Mutual Insurance

---

[1] Briefly, the plaintiffs alleged that they had been injured in a 2003 car accident in South Carolina caused by another driver, Charles Dean, who was underinsured.  They alleged that their underinsurance provider, State Farm Automobile Mutual Insurance Company, did not adequately compensate them for their injuries.  The plaintiffs filed suit, alleging breach of contract claims on the underinsurance policy, and sought Hayseeds damages.  They also filed claims under the West Virginia Unfair Trade Practices Act ("WVUTPA").

[2] The plaintiffs' cases, *Barker et al. v. State Farm Automobile Insurance Company*, No. 2:07-cv-966, and *Strickland et al. v. State Farm Automobile Insurance Company*, No. 2:07-cv-967, were consolidated for trial.  The plaintiffs have jointly filed the Motion for a New Trial, and I will address it accordingly.

Company ("State Farm") consistent with the jury's verdict. Moreover, because the jury had returned a verdict entirely in favor of State Farm on the issue of causation, I subsequently found on March 9, 2009, that none of the plaintiffs had substantially prevailed in their claims under *Hayseeds, Inc. v. State Farm Fire & Casualty*, 352 S.E.2d 73 (W. Va. 1986), and ordered that judgment on those claims be entered in State Farm's favor (Order Mar. 9, 2009 [Docket 166].)  Further, because the plaintiffs chose not to pursue their remaining claims under the West Virginia Unfair Trade Practices Act ("WVUTPA"), W. Va. Code § 33-11-4(9) after the jury verdict was returned, I dismissed those claims with prejudice.  (*Id.*)  The plaintiffs filed their Motion for a New Trial on March 15, 2009, State Farm responded on March 26, and the plaintiffs replied on April 4.  This matter is now ripe for review.

**II. Discussion**

The plaintiffs assert that a new trial is warranted under Rule 59 for the following reasons: (1) my decision to bifurcate the evidence on the fifth day of trial, after evidence of insurance had been admitted, was prejudicial error; (2) my comments about time and failure to allow sufficient time to try these personal injury cases were prejudicial error; (3) my rulings admitting into evidence photographs of the plaintiffs' 2003 collision and the Stricklands' 2004 collision and allowing testimony about the property damage to the plaintiffs' car from the 2003 collision were prejudicial error; and (4) the verdict is against the clear weight of the evidence.

A new trial may be granted to any party in an action in which there has been a jury trial.  Fed. R. Civ. P. 59(a).  The reasons for which a new trial will be granted include: "(1) the verdict is against the clear weight of the evidence; or (2) is based upon evidence which is false; or (3) will result in a miscarriage of justice, even though there may be substantial evidence which would

prevent the direction of a verdict." *Cline v. Wal-Mart Stores, Inc.* 144 F.3d 294, 301 (4th Cir. 1998) (citing *Atlas Food Sys. & Servs., Inc. v. Crane Nat'l Vendors, Inc.*, 99 F.3d 587, 594 (4th Cir. 1996)).  The decision to grant or deny a new trial is within the sole discretion of the trial court. *Id.* at 301.

### A. Bifurcation

The plaintiffs first argue that my decision to bifurcate the evidence on the fifth day of trial was prejudicial error because some evidence already had been admitted of insurance and payments of insurance proceeds.  Specifically, the plaintiffs allege that they were prejudiced by the introduction of insurance issues before bifurcation, including prepayments made by State Farm and the liability payments from Charles Dean's insurance carrier.  They claim that "it is clear the Jury decided the Plaintiffs received enough compensation from other insurance and didn't deserve anything more."  (Pls.' Mem. Supp. Mot. New Trial 7 [Docket 172].)

Before trial commenced in this case, I had denied the plaintiffs' motions to bifurcate, which were opposed by State Farm, on the ground that bifurcation would not promote convenience, avoid prejudice, or promote judicial economy.  On the fifth day of what originally was scheduled to be a four-day trial, and in light of the fact that the plaintiffs had not yet completed their case, I decided to bifurcate the evidence because it had become apparent that bifurcation would promote convenience and judicial economy.  If the jury were to determine, as it ultimately did, that the plaintiffs had not suffered damages proximately caused by Charles Dean in excess of what had already been paid to them, I anticipated a more expedient end to the trial as to the statutory and

common law bad faith claims.[3] Notably, I did not decide to bifurcate the trial because of any potential prejudice.

Moreover, on the fifth day of trial, the parties raised an issue in chambers that had not previously been brought to my attention, and as to which there is no guiding law in West Virginia. The parties disagreed over the temporal boundaries of a WVUTPA claim—whether the actions comprising a failure to settle under the statute were continuing through trial, or whether those actions ended the date the complaint was filed. If I were to decide that the allegedly wrongful failure to settle under the WVUTPA continued through the course of litigation, defense counsel potentially could have been called as witnesses to testify as to what advice they had given State Farm regarding settlement and their participation in settlement negotiations. If that had been the case, bifurcation would have become essential.

After making the decision to bifurcate, I limited the remainder of the evidence to the issues of proximate cause and damages. I explained my decision to bifurcate the evidence to the jury, and issued a limiting instruction as to any evidence of insurance the jury heard prior to bifurcation. The jury was instructed multiple times that they were not to not consider any issues of insurance in deciding whether, and to what extent, the plaintiffs proved by a preponderance of the evidence that

---

[3] Under that scenario, the trial would have been (and indeed was) curtailed because I had to determine that one or more of the plaintiffs had substantially prevailed before I could instruct the jury as to *Hayseeds* damages. *See McCormick v. Allstate Ins. Co. et al.*, 475 S.E.2d 507, 513-14 (W. Va. 1996). If one or more of the plaintiffs had not substantially prevailed, I would not have needed to issue a *Hayseeds* instruction as to them. If none of the plaintiffs substantially prevailed, I could forgo a *Hayseeds* instruction altogether. Additionally, plaintiffs' counsel had informed me that, if a verdict was returned in State Farm's favor on the issue of damages, or if the damages awarded to the plaintiffs did not exceed what had already been paid to them, they would not pursue the WVUTPA claims.

they suffered damages that were proximately caused by Charles Dean's negligence in causing the collision. They were told not to consider any demands made by the plaintiffs regarding insurance or any insurance payments made to them. The jury explicitly was instructed that the only issue they were to consider at that time was proximate cause and damages, if any. Similarly, the verdict form clearly asked the jury first: "do you find that [a specific plaintiff] suffered damages proximately caused by Charles Dean's negligence or fault?" The form then asked: "if yes, what amount will reasonably compensate [a specific plaintiff] for the following damages proximately caused by Charles Dean's negligence or fault" and provided for the assignment of dollar amounts for past medical expenses, past pain and suffering, past loss of enjoyment of life, future medical expenses, future pain and suffering, and future loss of enjoyment of life. The jury answered "no" as to the issue of proximate cause for each plaintiff, and never reached the issue of damages (Jury Verdict Form [Docket 162]).

Bifurcation of a first party bad faith action is not mandatory, and is left to the judge's discretion. *See Light v. Allstate Ins. Co.*, 506 S.E.2d 64, 69, 73 (W. Va. 1998); *see also* Fed. R. Civ. P. 42(b). This is because "[i]n a first-party bad faith action the insurer is actually the named defendant . . . . Thus, the primary concern of disclosing the existence of insurance . . . does not exist in a first-party bad faith action." *Light*, 506 S.E.2d at 71. As the West Virginia Supreme Court of Appeals found in *Light*, there is a marked difference between evidence of insurance in a third-party bad faith action and in a first-party action, where the insurance company (State Farm) is the named defendant and the jury is aware from the beginning that there is an insurance issue. *See id.*[4]

---

[4] I note that the plaintiffs' vehement reliance on *Light* to support their argument that insurance issues do cause prejudice is misplaced. The four *Reed* factors discussed by the *Light* court (continued...)

The plaintiffs have not demonstrated that they were prejudiced by my belated bifurcation. Bifurcation in the midst of trial does not constitute reversible error without a demonstration of prejudice. *See Smith v. Celotex Corp.*, Nos. 86-3663(L), 86-3664, 1988 WL 124993, at *2 (4th Cir. Nov. 23, 1988) (citing *Helminski v. Ayerst Labs.*, 766 F.2d 208 (6th Cir.1985), *cert. denied*, 474 U.S. 981 (1985) (late bifurcation does not warrant reversal solely because of its lateness without some showing of prejudice)). They have not shown how evidence of insurance prejudiced the jury's determination as to proximate cause, or that the court's jury instructions on this issue were inadequate to cure any resulting prejudice.[5] Moreover, even if the belated bifurcation constituted error, because the jury in this case did not reach the issue of damages and decided in State Farm's favor on causation, any error is harmless. *See Deadwyler v. Volkswagen of Am., Inc.*, 884 F.2d 779, 781-84 (4th Cir. 1989), *cert. denied*, 493 U.S. 1078 (1990) ("Evidentiary errors regarding damages are harmless where special verdict questions regarding liability are determined in a defendant's favor.").

---

[4](...continued)
which operate to protect an insured from undue prejudice caused by the admission of evidence of insurance at trial were discussed in the context of a third-party action against an insurer, not a first party action. *See Light*, 506 S.E.2d at 70.

[5] I also note that the physical evidence of insurance which had been admitted during the course of trial was not submitted to the jury to consider during its deliberations, including the insurance policies themselves.

**B. Time Management**

Next, the plaintiffs argue that there was a miscarriage of justice caused by my management of the trial, namely, the time limitations I placed on both parties and my comments on time to counsel during the course of trial.[6] They contend that

> The Judge improperly caused the Jury to think the trial was taking too long and it was the plaintiffs [sic] fault. The judge improperly injected the issue of time and scheduling into the Jury's thought process throughout the entire trial time. At the beginning of the trial, the Jury was predisposed to have prejudice toward the Plaintiffs even though they have the burden of proof.

(Pls' Mem. Supp. Mot. New Trial 7.)

The court is charged with trial management, and has an affirmative duty to prevent the trial from becoming protracted and costly. *United States v. Smith*, 452 F.3d 323, 332 (4th Cir. 2006), *cert. denied*, 549 U.S. 1066. I indicated to both parties at the joint pretrial conference on January 28, 2009, that the trial would be limited to four days, but that counsel could have more time to present their respective cases if it became necessary. The jurors also were told at the beginning of jury selection that this would be a four-day trial. As the trial progressed, it became evident that the presentation of evidence would take a longer amount of time, and the jury was so informed. I did not assign "fault" to that necessity and did not indicate such to the jury.

The plaintiffs have not demonstrated that any time limitations prejudiced them or caused a miscarriage of justice. I did not enforce the original restriction of two days per party, and allowed

---

[6] The plaintiffs frame their argument as a challenge to my instructions and state that instructions may constitute improper coercion of a jury verdict. (Pls' Mem. Supp. Mot. New Trial 7.) This is misleading. The plaintiffs are not challenging my jury instructions, but rather my trial management. This is an important distinction because "[q]uestions of trial management are quintessentially the province of the district courts." *United States v. Smith*, 452 F.3d 323, 332 (4th Cir. 2006), *cert. denied*, 549 U.S. 1066.

the plaintiffs to extend the presentation of their case well beyond that time—the presentation of the plaintiffs' case ended on the fifth day of trial.[7]

Additionally, the plaintiffs have not demonstrated that the court's oral reminders to counsel for both sides to "pick up the pace" or be mindful of time were prejudicial or caused a miscarriage of justice.[8] As the Fourth Circuit explained, "[j]udicial resources are not limitless, and drawn-out trials make jury service increasingly incompatible with normal family and employment obligations. Trial judges are thus entirely within their right to keep trial proceedings moving, and, if necessary, to ask counsel to pick up the pace." *Smith*, 452 F.3d at 332. Additionally,

> district court judges may adopt a variety of approaches. Some may be more temperate and understated, interposing themselves only infrequently. Others may seek greater involvement and take a firmer role. . . . Trials are serious business. A district judge's interruptions, even when abrupt, may be only part and parcel of a pointed adversarial process designed to develop a clear set of facts in a relatively short amount of time.

*Id.* at 332-33.[9]

---

[7] Indeed, my best estimate is that the plaintiffs presented over eleven hours and forty-five minutes of testimony through direct and redirect examination of fifteen witnesses over the course of six days. I note that this time estimation does not include the videotaped deposition of Dr. Mehr, one of the plaintiffs' expert witnesses. Nor does it include the admission of physical exhibits. I also note that the plaintiffs' estimate is higher than mine—they estimate that they took fifteen hours and nine minutes to present their case.

[8] In making this argument, the plaintiffs emphasize that they do not have the benefit of a transcript in filing this motion for a new trial due to the deadline by which the motion had to be filed. (Pls.' Mem. Supp. Mot. New Trial 8.) The court is advised, however, that the plaintiffs have not ordered a transcript as of the date of this Order. The court nevertheless is confident that, had the plaintiffs procured a transcript, the record would show that the court appropriately reminded counsel for both parties of time considerations, when necessary to do so to manage the trial in a timely manner, and that the court did not "chastize[] Plaintiffs' counsel at every turn." (*Id.*)

[9] Because I have determined that the plaintiffs had sufficient time in which to present their case, and that I was within my discretion to manage the trial in an efficient manner, I decline to enter into the ongoing debate between the parties over whether the plaintiffs were required by the
(continued...)

**C. The 2003 and 2004 Collision Photographs Were Properly Admitted**

Thirdly, the plaintiffs argue that I committed a miscarriage of justice in my rulings allowing photographs of the plaintiffs' 2003 collision (or more specifically the photographs of their automobile after the collision) and of the Stricklands' 2004 collision to be admitted into evidence. They contend that these photographs were not relevant and were prejudicial. Moreover, the plaintiffs continue their argument first presented (and denied) in a motion *in limine* that there should have been an expert witness (namely, a biochemical engineer) to testify that there was a correlation between the property damage to the vehicle involved in the 2003 collision and the likelihood of injury to the plaintiffs.

Rulings on the admissibility of evidence are left to the court's discretion, and that discretion is abused only if the trial court acted in an arbitrary or irrational way in admitting evidence. *See United States v. Williams*, 445 F.3d 724, 732 (4th Cir. 2006); *United States v. Hodge*, 354 F.3d 305, 312 (4th Cir. 2004). As I previously held in denying the plaintiffs' motion *in limine*, the photographs depicting the plaintiffs' vehicle were relevant and admissible evidence under Federal Rules of Evidence 401 and 403. The correlation, if any, between damage to the vehicle involved in the 2003 collision and damage to the plaintiffs is a matter of common sense and the jury was allowed to draw a reasonable inference as to that issue from the photographs based on their own experience. Testimony by an expert on that issue would not have assisted the trier of fact to

---

[9](...continued)
defendant to call witnesses to authenticate all of their medical records. I will note, however, that the defendant correctly points out that the plaintiffs admitted over 110 exhibits into evidence, and did not call any witness for the sole purpose of authenticating medical records. (Ex. List [Docket 211].)

understand the evidence or to determine a fact in issue pursuant to Federal Rule of Evidence 702. The plaintiffs have cited no authority to demonstrate otherwise.

The plaintiffs also argue that Officer Pepper should not have been allowed to testify as to the dollar amount of damage sustained by the plaintiffs' vehicle. I allowed Officer Pepper to testify about his estimate of the amount of damage because he had extensive personal experience with automobile repair and with performing estimates of vehicle damage in his father's automobile repair shop. Significantly, Officer Pepper's estimate was below that of the repair shop, and the plaintiffs introduced impeachment evidence as to that fact.

The plaintiffs further argue that my ruling allowing the photograph of the Stricklands' vehicle after their 2004 accident to be admitted into evidence was prejudicial. They assert that: "The only use of this photograph was to inflame the Jury and to prejudice the Plaintiffs in violation of the rules of evidence . . . ." (Pls.' Mem. Supp. Mot. New Trial 9.) They are wrong. First, the photograph had a proper foundation established by Mr. Strickland's identification of the vehicle as the one he was driving in the 2004 collision. Moreover, the photograph was highly relevant to the issue of causation and to damages, because Mrs. Strickland alleged that she suffered a brain injury caused by the 2003 collision with Mr. Dean and not by the 2004 collision, in which the property damage to the car was visually more severe. Several of the plaintiffs' expert witnesses (and in particular Dr. O'Shanick) testified that severity of impact is a factor to consider in diagnosing a traumatic brain injury. I conclude that the probative value of the photograph was not outweighed by its prejudicial effect.[10]

---

[10] I note that I excluded other evidence about the 2004 wreck, including the property damage estimate and accident report from that incident.

Because the plaintiffs have not demonstrated any prejudice from the admission of the photographic evidence of the 2003 and 2004 collisions, they have not suffered a miscarriage of justice.

**D. The Verdict Was Not Contrary to the Clear Weight of the Evidence**

Finally, the plaintiffs contend that a new trial is warranted because the verdict was against the clear weight of the evidence—all of their doctors testified that the plaintiffs' injuries were related to the collision. They argue that "there was **NO** evidence to contradict [that] the Plaintiffs were injured in the wreck," and therefore the verdict demonstrates that the jury was confused and had been prejudiced against them. (Pls.' Mem. Supp. Mot. New Trial 11 (emphasis in original).)

Rule 59(a) allows the court to weigh the evidence and consider the credibility of the witnesses and, if it finds the verdict is against the clear weight of the evidence, is based on false evidence or will result in a miscarriage of justice, it must set aside the verdict, even if supported by substantial evidence, and grant a new trial. *Atlas Food Sys. & Serv., Inc. v. Crane Nat'l Vendors, Inc.*, 99 F.3d 587, 594 (4th Cir. 1996). This determination is within the court's sound discretion and is reviewable only in the most exceptional circumstances. *Lindner v. Durham Hosiery Mills, Inc.*, 761 F.2d 162, 168 (4th Cir. 1985).

My review of the evidence, which included extensive testimony from the four plaintiffs, the witness to the accident, the investigating officer, and thirteen retained medical experts, leads me to the conclusion that the verdict was not against the clear weight of the evidence. First, throughout trial, evidence was presented regarding all four plaintiffs' preexisting medical conditions. None of the elderly plaintiffs enjoyed good health before the collision, and none of them were treated by any of the expert witnesses prior to the collision.

Moreover, the plaintiffs were referred to the various medical experts by their attorney, Mr. Bee. It became clear throughout the experts' testimony that Mr. Bee commonly referred patients to them, that the experts had a longstanding relationship with Mr. Bee, and that they often testified for Mr. Bee at depositions or trials. Many of the expert witnesses had treated several of the plaintiffs, and diagnosed them with the same medical conditions. It is fair to assume that the jury factored the extremely close relationship between these expert witnesses and plaintiffs' counsel into their determination of the witnesses' credibility. The jury was entitled to judge the credibility of these witnesses, and to disbelieve their assessment of what caused the plaintiffs' injuries. I also note that these witnesses were vigorously cross-examined by defense counsel, particularly as to the issue of causation.

I also find that the evidence as to causation was not uncontroverted. The jury heard evidence from the defendant's expert witnesses that the plaintiffs' injuries either did not exist (namely, Mrs. Strickland's alleged brain injury), or that they were not caused by the collision.

Finally, I note that the jury did not, contrary to plaintiffs' arguments, determine that the plaintiffs were not injured. Instead, the jury found, by a preponderance of the evidence, that any injuries the plaintiffs had suffered were not proximately caused by the collision.

**III. Conclusion**

For the reasons stated above, the plaintiffs are not entitled to a new trial under Rule 59(a) and their Motion is **DENIED**. The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: April 15, 2009

_____
Joseph R. Goodwin, Chief Judge